(77 App. Div. 176.)

## SHEEHAN v. ERBE. ·

(Supreme Court, Appellate Division, First Department. December 5, 1902.)

1. ATTORNEY AND CLIENT—CONTRACTS—GOOD FAITH—BURDEN OF PROOF—EVIDENCE.

> Plaintiff, the owner of a valuable ground lease, mortgaged the same, and thereafter, becoming indebted and unable to obtain a further loan, applied to defendant, an attorney, for advice. Defendant advised the assignment of the ground lease to him, which plaintiff refused to do until after an action had been begun by the mortgagee's attorney, with whom defendant officed, when plaintiff executed an absolute assignment to defendant in consideration of $1. Plaintiff being unable to read the assignment, defendant misread it to him. Defendant testified that the actual consideration was his agreement to pay all claims against plaintiff, together with one-half of the mortgage, and to divide the rents received, which evidence plaintiff contradicted. *Held*, in an action to cancel the assignment, that defendant sustained a fiduciary relation to plaintiff, and that the evidence did not sustain defendant's burden of proof to show that it was free from fraud.

Appeal from special term, New York county.

Action by William Sheehan against William Erbe. From a judgment dismissing plaintiff's complaint, and from an order denying a motion to correct the judgment by striking therefrom the words "upon the merits," plaintiff appeals. Reversed.

Argued before VAN BRUNT, P. J., and HATCH, McLAUGHLIN, O'BRIEN, and INGRAHAM, JJ.

John J. Lenehan, for appellant.
Grant C. Fox, for respondent.

McLAUGHLIN, J. This action was brought to have an assignment of a lease of certain real estate in the city of New York declared fraudulent and void, and canceled of record, or else to have such assignment declared one in trust for the benefit of plaintiff's creditors, and reformed accordingly, and to compel defendant to account for the rents received, and for other relief. The answer admitted the assignment of the lease, but denied the other material allegations of the complaint. It also alleged, as a separate defense, that the plaintiff assigned the lease to the defendant upon his agreeing to advance a sum sufficient to discharge certain judgments and claims which existed against the plaintiff, pay off one-half of a mortgage of $6,000 on the leasehold estate, and, after reimbursing himself for the moneys advanced, equally divide the net rentals between the parties, and that the defendant had fully performed the agreement upon his part. The court at special term reached the conclusion that, upon the facts presented, the plaintiff was not entitled to any relief, and directed a dismissal of the complaint. From the judgment entered upon a decision to this effect, the plaintiff has appealed.

The action is in equity, and whether or not the court ought to have exercised the power which it possessed, in the plaintiff's behalf, depends, of course, upon the facts established at the trial, and, in order to determine whether it erred in refusing to grant the plaintiff any relief, necessarily requires at least a brief examination of such facts.

The plaintiff is well advanced in years. He possesses very little education, being barely able to read and write. In 1891 he leased for a term of ten years, with privilege of fifteen years' renewal, certain real estate in the city of New York, for which he agreed to pay an annual rental of $5,000. Immediately following the execution of the lease he commenced to erect, and in 1895 had succeeded in erecting, upon the leasehold estate, buildings which cost upwards of $21,000. Some time during the year just mentioned, he applied to one Ruppert for a loan to enable him to erect additional buildings; and, after considerable negotiations, Ruppert did loan him $3,000, taking as collateral security for the payment of the same a mortgage upon his leasehold estate. Shortly thereafter Ruppert loaned him the further sum of $3,000, and a mortgage was then given for $6,000, presumably to cover both loans, although the first mortgage was not satisfied of record. When these loans were made, one Fitch was Ruppert's attorney. The defendant, a lawyer, was employed in Fitch's office, and it seems to have been his duty, as such employé, to attend to a considerable part of Ruppert's business, looking after chattel mortgages, etc.; and in this connection it also appeared that he drew the first mortgage, witnessed plaintiff's signature thereto, and took his acknowledgment. The money which plaintiff obtained from Ruppert he expended in new buildings upon the premises covered by the lease, and in December, 1895, had spent for this purpose something over $11,000; making a total investment by him in buildings of over $30,000. About this time, or shortly thereafter, he became indebted to various persons for materials used in the construction of his buildings, in something like $2,100, exclusive of the Ruppert mortgage. Some or all of these persons were pressing him for payment of their respective claims, some of which had been reduced to judgments, executions issued thereon and returned unsatisfied, and proceedings supplementary to execution instituted. In his embarrassment he applied to Ruppert for a further loan, sufficient to pay off these claims. The application was denied. He nevertheless continued until the early part of April, 1896, to urge Ruppert to help him in his trouble, making frequent visits to his office, where he often met the defendant, and consulted and advised with him as to what could be done to relieve him from his financial difficulties. Finally he was advised, according to his testimony, either by the defendant or some one else, apparently acting in Ruppert's interest, that he had better make an assignment of his lease; and, when asked to whom it should be made, he was told, to the defendant, which statement was coupled with a further one that if he did not do so an action would be instituted to foreclose the Ruppert mortgage; and on the 10th of April, 1896 (he in the meantime having refused to make an assignment of the lease) an action was brought by Ruppert to foreclose his mortgage, the defendant making the verification to the complaint. Simultaneously with the commencement of that action, the plaintiff therein applied for the appointment of a receiver of the interest sought to be foreclosed. As soon as the foreclosure action was commenced, the plaintiff placed all of the papers in the hands of the defendant, to see if he could not effect a settlement of some kind with Ruppert. It also appeared that about this time·

plaintiff frequently advised and consulted with the defendant, gave him a list of his creditors, together with the amount of their respective claims, and informed him as to the details of his property and business, and the income therefrom. Being unable to make any settlement with Ruppert as to the foreclosure action, or to get him to advance any further money, on the 13th of April, three days after the foreclosure action was instituted, the plaintiff delivered to the defendant, for the nominal consideration of $1, an absolute assignment of the lease, including the right of renewal. The defendant, however, testified at the trial that the actual consideration was an agreement upon his part to pay off the claims which existed against the plaintiff at the time the assignment was made, satisfy and discharge one-half of the Ruppert mortgage, and to divide equally with the plaintiff the net rents received. This was contradicted by the plaintiff. The defendant drew the assignment himself, and, according to plaintiff's testimony, then handed it to him to read, which he being unable to do, the defendant read it to him, but not according to its terms. Immediately following the execution of the assignment, the defendant took possession of the leasehold estate, collected the rents, and paid therefrom one half to the plaintiff, retaining the other half for himself, except as to the rent of a saloon, of which it seems the plaintiff had the whole. According to the defendant's own testimony, from the 1st of April, 1895, until the 1st of January, 1902, he collected $53,-151.42; of this sum he paid the ground rent, $28,749.94; to the plaintiff $15,069.77; and retained for himself $9,310.04,—and that if the present rental, $9,425 per year, continued for the next fifteen years, he would receive the same as he was getting at the time of the trial, viz., $142.50 per month.

The trial court, while of the opinion that the transactions were suspicious, so far as the defendant was concerned, reached the conclusion that this was not enough to warrant the correction of the assignment for fraud or mistake; that, to justify that, the testimony must be "clear, unequivocal, and convincing." The learned justice seems to have overlooked the fact that there was here a confidential relation existing between the parties, and that, in addition thereto, they did not deal upon a plane of equality, by reason of the strength and superior knowledge on one, and the weakness and confidence, and dependence justifiably reposed, of the other, and that the rule referred to, therefore, had no application whatever. On the contrary, the rule to be applied was that there being suspicious circumstances, by reason of the facts stated, the burden was put upon the defendant of showing that the transaction was a fair one, and that no undue advantage of the plaintiff was taken by him. Green v. Roworth, 113 N. Y. 462, 21 N. E. 165; Fisher v. Bishop, 108 N. Y. 25, 15 N. E. 331, 2 Am. St. Rep. 357; Cowee v. Cornell, 75 N. Y. 99, 31 Am. Rep. 428; Rosevear v. Sullivan, 47 App. Div. 421, 62 N. Y. Supp. 447. Every contract must be fair,—that is, it must be free from deceit, fraud, or misrepresentation practiced by one of the contracting parties upon the other; and whenever a court of equity can see that undue and unconscionable advantage has been taken by one of the parties, by reason of a confidential relation existing between them at the time the

contract was made, or that they did not then deal upon a plane of equality, by reason of the facts stated, it never hesitates to exercise its equitable powers to enforce a right or to prevent the consummation of a wrong. That there were suspicious circumstances sufficient to cast upon the defendant, under the rule above alluded to, the burden of proving that the plaintiff fully understood the contents and effect of the assignment, and that defendant did not take undue and unconscionable advantage of him, cannot, we think, be seriously questioned, and especially in view of the relations which existed between them, to say nothing of the pecuniary value of the contract which the defendant obtained, or that the assignment of the lease, absolute upon its face, was not in fact what it really purported to be, and that the agreement between the parties was not correctly expressed therein.

The trial proceeded upon a wrong theory; the learned justice sitting at special term applied a wrong rule of law to the facts; and for these reasons the judgment appealed from must be reversed, and a new trial ordered, with costs to the appellant to abide the event. All concur.