In the Matter of the Arbitration between GRANITE WORSTED MILLS, INC., Respondent, and AARONSON COWEN, LTD., Appellant.

In the Matter of the Arbitration between I. AARONSON, LTD., Appellant, and GRANITE WORSTED MILLS, INC., Respondent.

First Department, February 29, 1968.

304

*Copal Mintz* of counsel (*Sahn, Shapiro & Epstein,* attorneys), for appellant.

*Ronald L. Unger* of counsel (*Sperry, Weinberg & Kallman,* attorneys), for respondent.

RABIN, J. The question posed by this appeal is whether the arbitrator of the dispute between the parties exceeded his powers in awarding the sum of $3,780.51 to the appellant on its claim of defective goods. Special Term thought he did; vacated the award and remitted the matter to the arbitrator for further proceedings.

These proceedings are the result of two sales by Granite Worsted Mills, Inc., (herein referred to as the respondent) to Aaronson Cowen, Ltd., (now known as I. Aaronson, Ltd., and hereinafter referred to as the appellant) of certain cloth goods to be used by the appellant in the manufacture of sport coats. The goods were so used. Subsequently, after its complaint that the goods shipped proved to be defective had been rejected, the appellant demanded arbitration.

The matter proceeded to arbitration before an arbitrator experienced in the textile field. Although in its demand for

arbitration the appellant claimed the sum of $7,313.20 as its damage, the arbitrator awarded the sum of $3,780.51, plus administration fees. It is the respondent's position that in making an award in an amount greater than $938.64 — the purchase price of the goods shipped — the arbitrator exceeded his powers because, as it asserts, the contract limited the damage at its maximum to such amount.

Apparently, the arbitrator considered the clause relied on by the respondent, not as a limitation of liability but rather as an attempt to so limit it.

In determining the question involved we need but examine two clauses of the two sales contracts, pursuant to which the sales were made. The first is the arbitration clause, the pertinent part of which is as follows: " 12. ARBITRATION. Any controversy or claim arising out of or relating to this contract shall be settled by arbitration."

The clause is a broad one and contains no restrictive provision. As such, the arbitrator was given the power to consider all of the clauses of the contract in determining the controversy between the parties. Of necessity the arbitrator had to decide what effect should be given to the entirely separate paragraph of the contract entitled " DEFECTIVE GOODS " which is the second clause that calls for our consideration. We set it forth in full. " 6. DEFECTIVE GOODS. No goods shall be returned by Buyer unless such return is authorized by Seller. No goods shall be returned nor allowance made, unless defective. Buyer shall be deemed to have accepted goods and his right to reject or claim damages for breach of warranty or otherwise shall expire 15 days after invoice date. Notwithstanding the foregoing, sponging, cutting or otherwise processing goods constitutes final acceptance and waiver of any defect in the goods. If within 15 days after invoice date and before the goods have been sponged, cut or otherwise processed, Buyer notifies Seller in writing of a claimed defect, Buyer shall, together with his notice of claim, offer Seller, in writing, prompt opportunity to examine the goods. Failure to do so constitutes acceptance and waiver of all claims for defects. If Seller determines claim to be valid, it or Mills may replace defective goods within a reasonable time. In such event Seller or Mills shall not be liable for any damages arising from the defective delivery or the delay caused thereby. Buyer shall not be entitled to claim or recover consequential damages for defective goods (whether the defect be latent or otherwise), nor for manufacturing, processing or selling expenses or for the loss of contemplated use or profits; and in all events Buyer's damages shall not exceed the difference

in value on date of delivery between goods specified and goods actually delivered.''

In the light of these clauses can we say that the arbitrator, in making the contested award, exceeded his powers (see CPLR 7511, subd. [b], par. 1, cl. [iii]), or that he gave a '' completely irrational construction to the provisions in dispute an, in effect, made a new contract for the parties '' ? (*Matter of National Cash Register Co.* [*Wilson*], 8 N Y 2d 377, 383.)

Any such conclusion can only be based on the amount of damages awarded. In relation to that question, appellant maintained that the clause was unconscionable and should not be enforced. It likewise asserted that the custom and usage in the textile industry was such that clauses of this nature are never given effect.

Of course, we do not know the bases for the arbitrator's decision. But, considering the arguments presented here, and at Special Term, it is quite clear that the arbitrator, in essence, did no more than a court of law could do in the circumstances. Courts are often presented with questions of whether a given clause is unconscionable and should not be enforced. Indeed, questions concerning the enforcibility of stipulations limiting liability often arise, and courts have disregarded such provisions under various circumstances. (E.g., *Rappaport* v. *Phil Gottlieb-Sattler, Inc.*, 280 App. Div. 424, affd. 305 N. Y. 594; *Klar* v. *H. & M. Parcel Room,* 270 App. Div. 538, affd. 296, N. Y. 1044.)

The respondent, however, argues that different rules of law apply to unconscionability in commercial cases as opposed to situations involving consumers, where clauses limiting liability are presumptively unconscionable. (Uniform Commercial Code, § 2-719, subd. [3].) That is quite so and, indeed, it is quite possible — although not without doubt in view of the highly restrictive and seemingly unfair provision with respect to latent defects — that a court of law would not have found the clause in issue here unconscionable. Nevertheless, the mere statement of the issue — whether a clause is or is not unconscionable — presents a matter for factual determination. And this was recognized by Special Term, which held that '' the limitation of damage is not unconscionable in the circumstances here ''. However, '' the circumstances here '' were for the arbitrator, and the arbitrator only, to evaluate, and he alone had the power to determine unconscionability.

While it might be argued that the court would never have come to the same conclusion, either with respect to the applicable rules of law, or as to what the facts were, this is irrelevant. The arbitrator's award is not reviewable by the court of errors of

law or fact. (*Matter of Colletti*, 23 A D 2d 245, 248, affd. 17 N Y 2d 460; *Matter of Shevell* [*Besen*], 29 A D 2d 751.)

The same principles are equally applicable to the other arguments in the attempt to show usurpation of power. For example, if there were — as seems to have been urged — a custom and usage prevailing in the industry concerning the effect of such a highly restrictive clause, clearly, the arbitrator had the power to consider and give effect to such custom. Indeed, a myriad of arguments could be made with reference to the enforcibility or interpretation of the clause in question, i.e., should the limitation be applied to latent defects? Would that be unconscionable? Would it be contrary to custom and usage? On the other hand it is quite possible — although there is nothing in the record to indicate it — that the arbitrator found a course of conduct on the part of the respondent that would constitute a waiver of the clause relied on.

All the questions concerning the clause were presented to the arbitrator. These questions of necessity had to be considered in consequence of the demand for the sum of over $7,000 contained in the submission — a sum far in excess of the purchase price of the goods shipped. By such demand the respondent was made aware of the implications with respect to the scope of the arbitration. And, yet, despite such awareness it proceeded to arbitration and participated in it without first attempting through court application to limit the amount of the plaintiff's arbitrable claim. That is not to say that such application would necessarily have been granted, but failure to make such an attempt could be deemed as a submission to the arbitrator of the amount to be awarded, if within the limits of the amount demanded.

In the light of the broad arbitration clause, and considering the arguments seemingly presented to the arbitrator, we cannot say that his determination — that in the circumstances the clause should not be given effect — was beyond his power, or constituted an irrational result. Consequently, to vacate the award would constitute an intrusion upon the jurisdiction of the arbitrator. As stated by the Court of Appeals: " Once it be ascertained that the parties broadly agreed to arbitrate a dispute ' arising out of or in connection with ' the agreement, it is for the arbitrators to decide what the agreement means and to enforce it according to the rules of law which they deem appropriate in the circumstances." (*Matter of Exercycle Corp.* [*Maratta*], 9 N Y 2d 329, 334.)

Accordingly, the order appealed from should be reversed, the motion by the respondent to vacate the award should be denied

and the appellant's motion to confirm the award should be granted, with costs and disbursements to the appellant.

STEUER, J. (dissenting). I believe that Special Term decided the motion correctly and I would affirm.

Respondent sold petitioner piece goods according to two sales agreements identical in form. Petitioner, being dissatisfied with the quality of the merchandise, demanded arbitration and this was had. The contract price of the goods was $938.64. The contract, after specifying that there shall be no recovery for certain kinds of damage, provides '' and in all events Buyer's damages shall not exceed the difference in value on date of delivery between goods specified and goods actually delivered.'' Assuming that the goods actually delivered were worthless, the maximum recoverable under the contract was $938.64, as there is no contention that the goods specified were worth more than the contract price. The arbitrator's award, exclusive of costs, was for $3,780.51. Special Term rightfully concluded that in so finding the arbitrator disregarded the terms of the contract and thereby exceeded his powers. In awarding consequential damages the arbitrator was not making an award based on an interpretation of the contract but, in disregarding its express terms, was in effect making a new contract with obligations not assumed by the seller or contracted for by the buyer. The broad power conferred on an arbitrator is not that broad (see *Matter of National Cash Register Co. [Wilson]*, 8 N Y 2d 377, 383). Special Term correctly determined to remand the matter to the arbitrator for a determination in accord with the express terms of the agreement.

BOTEIN, P. J., EAGER and TILZER, JJ., concur with RABIN, J.; STEUER, J., dissents in opinion.

Order entered on February 28, 1967, reversed, on the law, with $50 costs and disbursements to the appellant, petitioner's motion to vacate the arbitration award denied, and appellant's motion to confirm the award granted.