# K & C, Inc., Appellant, *v.* Westinghouse Electric Corporation.

304

Argued October 9, 1969. Before JONES, COHEN, EAGEN, O'BRIEN, ROBERTS and POMEROY, JJ.

reargument refused April 21, 1970.

Wilbur F. Galbraith, with him Joseph N. Mack, for appellant.

Cloyd R. Mellott, with him Barton Z. Cowan, Robert W. Doty, and Eckert, Seamans & Cherin, for appellee.

OPINION BY MR. JUSTICE O'BRIEN, March 20, 1970:

The facts of the case are set forth in the opinion of the court en banc: "Plaintiff [appellant] is a Pennsylvania corporation, incorporated on November 17, 1961, and owned by a Mr. Knaufe and attorney Edgar J. Cooke. The two defendants were originally ALD, Inc. and Westinghouse Electric Corporation, but Westinghouse is the only defendant still in the case. From July 1, 1961 and for several years thereafter, ALD sold coin-operated dry cleaning machines manufactured by Westinghouse. Plaintiff as buyer entered into a written sales agreement with ALD as seller, dated November 27, 1961, for the purchase of a store remodeled by ALD for the operation of a coin-operated dry cleaning business in which were installed four model DC-20B Twin Westinghouse Coin-operated Dry Cleaners, which had been modified from Model DC-20A, plus miscellaneous equipment and services listed in the sales agreement, the store being located on Route 51 in Brentwood, Allegheny County. The agreement was executed and delivered on November 27, 1961. By agreement dated January 11, 1962, Westinghouse licensed plaintiff to use the Westinghouse registered service mark 'Laundromat' at the said store.

"The purpose of the Westinghouse dry cleaners was to dry clean clothing and certain other materials. The plaintiff's Route 51 store opened for business on January 7, 1962. Subsequently, difficulties developed with the machines and there was damage done to the clothing of certain customers of plaintiff who brought clothing to the store for cleaning. On October 1, 1962, having ceased use of the Westinghouse machines, plaintiff installed and used a key-operated Frigidaire dry cleaning machine, plus an additional one on February 15, 1963.

"Plaintiff had agreed to purchase the store and equipment from ALD for a price of $30,500, plus finance charges; $18,100 of the purchase price constitut-

ed the purchase price of the four Westinghouse machines. A down payment of $6,350 was paid by plaintiff at the outset, plus additional monthly installments for the twelve succeeding months from February 15, 1962, aggregating an additional $6,824.52. No further monthly payments were made, and in September of 1963 the sheriff replevied the four Westinghouse machines on the suit of the holder of the credit instrument by which the unpaid balance had been financed.

"The stipulation of the parties added additional facts relative to the details of the financing and repossession, culminating in the stipulation that the value of the Westinghouse machines and other equipment and goods replevied 'equals and does not exceed the unpaid balance of the purchase price, the cost of repossession and finance charges accrued to date of repossession with the resultant that the deficiency judgment claims of ALD are satisfied and K & C, Inc. has no claim against ALD, Inc. arising from repossession and resale.' "

Appellant brought suit to recover damages for breach of express and implied warranties arising from the sales agreement. Appellees took the position that Paragraph 5 of the sales agreement prevented the recovery of any special or consequential damages. That paragraph provides: "Seller makes no representations or guarantees, express or implied, in respect to any of the equipment covered by this order, except that it will deliver good title to said equipment sold, free from all liens and encumbrances. Warranties by manufacturers of equipment are limited to such of their standard written warranties as may accompany individual items of equipment ordered hereby, which warranties are limited to repair or replacement of any parts of the equipment within the time limit specified but shall not apply in case of abuse or misuse of equipment and shall not include in any warranty adjustment transportation,

labor, or installation costs, or other consequential or special damages. No one is authorized to assume any other liability or make any other representation in connection with the sale of this equipment."

Accordingly, after the stipulations of facts had been read into evidence before the jury, appellant asked the court to conduct a hearing out of the presence of the jury as provided in §2-302 of the Uniform Commercial Code, Act of April 6, 1953, 12A P.S. §2-302, to determine whether Paragraph 5 was unconscionable. After an extended hearing, the court held that Paragraph 5 was not unconscionable, and that consequential and special damages were thus excluded. Appellant then rested.[1] The court then granted appellees' motions for nonsuit, having accepted appellees' complicated argument which showed that no damages were recoverable. The argument ran: (1) the court had held as a matter of law that consequential and special damages were excluded; (2) thus the maximum amount of recovery available to appellant was the normal measure of damages for a breach of warranty under the Code, the difference between the purchase price and the value of the goods received; and (3) the stipulation of facts demonstrated that the machines received had a value in excess of the amount which appellant paid.

Following the granting of the compulsory nonsuit by the trial judge and prior to the argument of the exceptions before the court en banc, this Court abolished

---

[1] Appellant asserts here that it did not rest its case and that the motion for nonsuit was thus premature. Our reading of the record wherein counsel for appellant stated at page 265a, "Under all the circumstances, your Honor, the plaintiff rests," is the same as that of the trial judge. If counsel felt that the court misunderstood his statement, one which would appear to us to be susceptible of only a single meaning, he should have voiced his objection at the time the court granted the motion for nonsuit. He made no claim of untimeliness then, and we will not permit such a claim to be made now.

the requirement of privity of contract in warranty actions; *Kassab v. Central Soya*, 432 Pa. 217, 246 A. 2d 848 (1968). Since any ultimate liability rested with the manufacturer, which was now clearly a proper party, appellant withdrew its motion to remove the nonsuit as to ALD, Inc.

Following the refusal of the court en banc to remove the nonsuit against Westinghouse, K & C, Inc. took this appeal.

Appellant makes two main arguments. First it contends that Paragraph 5 of the sales agreement, excluding liability for consequential or special damages, is unconscionable within the meaning of §2-302 of the Code, or put another way, is a contract of adhesion. We are in complete agreement with the court below that appellant's argument cannot succeed. Section 2-719(3) of the Code provides: "Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not." Here the loss is commercial. As Comment 3 to §2-719(3) points out, the exclusion is "merely an allocation of unknown or undeterminable risks." Although we need not decide whether any exclusion of consequential damages where the loss is commercial can be unconscionable, cf. *Eimco Corp. v. Lombardi*, 193 Pa. Superior Ct. 1, 162 A. 2d 263 (1969); *Magar v. Lifetime, Inc.*, 187 Pa. Superior Ct. 143, 144 A. 2d 747 (1958), it is clear that the exclusion was not unconscionable here, where the buyer was hardly the sheep keeping company with wolves that it would have us believe. The court below stated the circumstances of the sale in the instant case: "[T]he two owners of the plaintiff corporation were an attorney who had practiced law for eleven years prior to entry of the sales agreement and a man who had

business experience as a rooming house landlord, as a merchant in the used furniture field including the renovation and resale of used washing machines, and in other matters. The two men for some six months or so prior to execution of the sales agreement were looking for an investment and made a long and careful study of the six or so manufacturers of coin-operated dry cleaning equipment. At length, after their study and investigation, they determined to utilize Westinghouse equipment, thereby leading into the sales agreement of November 27, 1961." Under these circumstances, the parties by excluding consequential damages had merely decided to allocate their risks in this way.

Appellant's other main argument is that Westinghouse was not a third party beneficiary of the sales agreement between ALD, Inc. and K & C, Inc. Westinghouse relied on Paragraph 5 of the agreement which stated in part: "Warranties by manufacturers of equipment are limited to . . . ." A clearer case of a contract made for the benefit of another would be hard to imagine, as Westinghouse was clearly the manufacturer, and ALD, Inc. merely a distributor. Pennsylvania cases have often recognized the third party beneficiary doctrine, and the court below cites several. Although no Pennsylvania case covers precisely the instant situation of a distributor seeking to benefit a manufacturer by exclusion of consequential damages, that is understandable. Prior to the decision of this Court in *Kassab v. Soya, supra,* privity was required to support an action for breach of warranty. However, cases from other jurisdictions have held that where a contract for the sale of goods between a dealer and a buyer contains a provision dealing with the liability of the manufacturer of the goods, that provision inures to the benefit of the manufacturer in an action by the buyer to recover from the manufacturer for breach of warranty.

*Sanders v. Allis Chalmers Manufacturing Company,* 115 S.E. 2d 793, 796 (Sup. Ct. of So. Car. 1960) ; *Williams v. Chrysler Corp.,* 137 S.E. 2d 225, 231 (Sup. Ct. of W. Va. 1964).

Finally appellant contends that, even assuming that no consequential or special damages are recoverable, that does not mean that *no* damages are recoverable. It is too late for appellant to raise this contention.

We specifically point out that we do not agree with appellee's argument that the stipulation itself precludes the recovery of damages once consequential and special damages have been eliminated. For one thing, appellee's assertion, acquiesced in by appellant and the court below, that the measure of damages for breach of warranty is the difference between the value as delivered and the *purchase price,* is incorrect. Section 2-714(2) of the Code states the correct rule: "The measure of damages for breach of warranty is the *difference* at the time and place of acceptance *between the value of the goods accepted and the value they would have had if they had been as warranted,* unless special circumstances show proximate damages of a different amount." (Emphasis added) The pre-Code rule of §69(7) of the Uniform Sales Act was the same. See *Ross v. C & S Coal & Clay Co.,* 350 Pa. 548, 39 A. 2d 584 (1944). The purchase price is not the relevant factor; the value the goods would have had if they had been as warranted is crucial. It is true that the purchase price is prima facie the value that the goods would have had if they had been as warranted. 77 C.J.S. Sales §376(b) ; *Grossman v. Johnson,* 242 N.C. 571, 89 S.E. 2d 141 (1955) ; *Holz v. Coates Motor Company,* 206 Va. 894, 147 S.E. 2d 152 (1966). However, it is possible that the purchaser made a good (or a bad) bargain, and he should not be deprived of the value of his bargain.

Nor do we agree with appellee's calculations to arrive at the value of the dry cleaners as delivered. The value at the time of replevy of the dry cleaners and other equipment was stipulated to be equal to the unpaid balance of the purchase price under the sales agreement, the cost of repossession, and the finance charges, i.e., $27,298.08. Appellees then say that $16,199.84 represented the value of the dry cleaners. Although neither the brief nor the record reveals the source of the $16,199.84 figure, it is apparent it is the figure bearing the same proportion to $27,298.08 that $18,000.00 bears to $30,500.00. The stipulation showed that of the total purchase price of $30,500.00, $18,100.00 represented the purchase price of the dry cleaners. The parties further stipulated, appellee's argument goes on, that the dry cleaners should be depreciated for all purposes over a six-year period beginning as of January 1, 1962. This comes out to $251.38 per month ($18,100.00 ÷ 72). At the time the dry cleaners were replevied, they had depreciated for twenty months, or $5,027.60 ($251.38 × 20). Thus, the undepreciated value of the dry cleaners at the time they were delivered to K & C was $21,227.44 ($16,199.84 + $5,027.60). Since the stipulated value of the dry cleaners at the time of delivery, $21,227.44, exceeded the purchase price, $18,100.00, by $3,127.44, no damages were recoverable.

Although we abjure any claims to special mathematical prowess, it would appear that certain defects exist in appellee's analysis. In the first place, the $16,199.84 figure cannot be derived from the stipulation because there is no provision that the proportion which the value of the dry cleaners bore to the value of the total equipment was a constant, i.e., the same at the time of replevy as in the purchase price. Secondly, it would appear improper to add depreciation to value at time of replevy to determine value received.

However, despite the errors in appellee's presentation, the important thing for our purposes is that appellant made no attempt at trial to contradict appellee's theories. It is apparent that appellant was primarily, probably entirely, interested in the consequential damages. When these were excluded, appellant rested its case. The burden of proof was on appellant, and if all of appellant's evidence is believed, at the time it rested, it had not shown that any damages were recoverable, i.e., that the value received was less than the value appellant should have received, absent any breach.

The judgment of nonsuit is affirmed.

Mr. Justice ROBERTS and Mr. Justice POMEROY concur in the result.

Mr. Chief Justice BELL took no part in the consideration or decision of this case.