**Owen JOHNSON, Plaintiff,**

v.

**MOBIL OIL CORPORATION, a Foreign Corporation, Defendant.**

**Civ. A. No. 4–73015.**

United States District Court,
E. D. Michigan, S. D.

June 15, 1976.

Walter A. Lucken, Jr., Barbara, Wisok, Tavoularis, Ruby & Domol, P. C., Detroit, Mich., for plaintiff.

X. Orhan, John J. Ronayne, III, Butzel, Long, Gust, Klein & Van Zile, Detroit, Mich., for defendant.

## MEMORANDUM OPINION

FEIKENS, District Judge.

Owen Johnson brought this action against Mobil Oil Corporation to recover

losses suffered when the service station he operated under Mobil's retail dealer contract was destroyed by fire. Plaintiff alleges that the fire was caused by events following defendant's delivery of gasoline containing water, and seeks to recover for the loss of inventory and other consequential damages. Defendant moves for a partial summary judgment dismissing plaintiff's claim for consequential damages, relying on a clause in the retail dealer contract that provides:

> In no event shall Seller be liable for prospective profits or special, indirect or consequential damages.

Defendant seeks to limit any recovery by plaintiff to "difference money damages" as prescribed by M.C.L.A. § 440.2714(2):

> The measure of damages for breach of warranty is the difference at the time and place of acceptance between the value of the goods accepted and the value they would have had if they had been as warranted, unless special circumstances show proximate damages of a different amount.

As authority for the exclusion of consequential damages, defendant relies on M.C.L.A. § 440.2719(3):

> Consequential damages may be limited or excluded unless the limitation or exclusion is unconscionable. Limitation of consequential damages for injury to the person in the case of consumer goods is prima facie unconscionable but limitation of damages where the loss is commercial is not.

Plaintiff opposes the motion on the ground that the clause excluding consequential damages is unconscionable. While it is true that the notion of unconscionability is most frequently employed to shield disadvantaged and uneducated consumers from overreaching merchants, *see, e. g., Williams v. Walker-Thomas Furniture Co.*, 121 U.S.App.D.C. 315, 350 F.2d 445 (1965) (Wright, J.), and that "findings of unconscionability should be rare in commercial settings," J. White & R. Summers, *Uniform Commercial Code*, § 12–11 at 385–86 (1972), even commercial contracts have been held

unconscionable under certain circumstances. In *Weaver v. American Oil Co.*, 276 N.E.2d 144 (Ind.S.Ct.1971), the court held unconscionable clauses in a service station lease that exculpated the oil company from any liability for its negligence, and obliged the lessee to indemnify the oil company for any loss. The factors relied on were (1) the limited education of the lessee (one and one-half years of high school), (2) his limited business experience (skilled and unskilled labor), (3) the fact that he did not read the lease prior to signing it, (4) the fact that the clauses in litigation had never been explained to him, (5) the superior bargaining power of American Oil, and (6) the take-it-or-leave-it nature of the printed lease. The court stated:

> When a party can show that the contract, which is sought to be enforced, was in fact an unconscionable one, due to a prodigious amount of bargaining power on behalf of the stronger party, which is used to the stronger party's advantage and is unknown to the lesser party, causing a great hardship and risk on the lesser party, the contract provision, or the contract as a whole, if the provision is not separable, should not be enforceable on the grounds that the provision is contrary to public policy. The party seeking to enforce such a contract has the burden of showing that the provisions were explained to the other party and *came to his knowledge* and there was in fact *a real and voluntary meeting of the minds and not merely an objective meeting.*

276 N.E.2d at 148 (emphasis original). Other courts have also found elements of unconscionability in transactions between oil companies and their retail dealers. *See Ashland Oil, Inc. v. Donahue*, 223 S.E.2d 433, (W.Va.S.Ct. App. 1976) (10-day cancellation clause in dealer agreement, available only to company, unconscionable on its face); *Shell Oil Co. v. Marinello*, 63 N.J. 402, 307 A.2d 598 (1973), *cert. denied*, 415 U.S. 920, 94 S.Ct. 1421, 39 L.Ed.2d 475 (1974) (provision in dealer agreement giving Shell absolute right to terminate on 10 days' notice void as against public policy).

While no Michigan cases have been found involving unconscionability in the service station context, the Michigan Court of Appeals has used an analysis similar to that in *Weaver* in another commercial setting. In *Allen v. Michigan Bell Telephone Co.*, 18 Mich.App. 632, 171 N.W.2d 689 (1969), the court held unconscionable a clause exculpating Bell from any liability to yellow page advertisers for failure to include advertising. The factors relied upon were (1) unequal bargaining power (plaintiff was an insurance agent), (2) the take-it-or-leave-it nature of the contract (i. e., the terms were non-negotiable), (3) the lack of a realistic alternative for communicating with the same audience of potential customers, and (4) the "substantive unreasonableness" of a clause precluding all liability. The court stated:

> We believe the law in Michigan to be that, where goods or services used by a significant segment of the public can be obtained from only one source, or from limited sources on no more favorable terms, an unreasonable term in a contract for such goods or services will not be enforced as a matter of public policy.

18 Mich.App. at 640, 171 N.W.2d at 694. The *Allen* case was criticized by a federal district judge in *Robinson Ins. & Real Estate Inc. v. Southwestern Bell Tel. Co.*, 366 F.Supp. 307, 310 (W.D.Ark.1973), in these words:

> *Allen* represents a departure from the majority view recognizing freedom to contract, is based upon faulty notions of the public interest, and is not in keeping with commercial realities.

Such criticism, assuming it is sound, does not detract from the force of the *Allen* case as an expression of Michigan law, nor from the obligation of this court in a diversity case to apply the law of Michigan. If it is true that *Allen* represents a departure from the majority view in a direction away from the freedom to contract, this departure must be borne in mind in deciding how the Michigan courts would approach questions of unconscionability in a service station dealership agreement.

Other courts have found unconscionability in a variety of commercial settings. For example, *Fairfield Lease Corp. v. Umberto*, 7 UCC Rep.Serv. 1181 (N.Y.Civ.Ct.1970), the court held unconscionable (and thus unenforceable) a lease of a coffee machine to a trucking company that gave the lessor the right to accelerate payment of all unaccrued and unearned rent upon the lessee's failure to perform any term of the lease. The court stated:

> [I]t does not appear that there was a definite or understandable reading by the defendant's son or his father of the printed agreement relating to defaults, if any were to occur, and the effects thereof. This court is not satisfied that the parties dealt "upon a plane of equality by reason of the strength and superior knowledge of one and the weakness . . . of the other."

7 UCC Rep.Serv. at 1182–83, quoting *Sheehan v. Erbe*, 77 App.Div. 176, 180, 79 N.Y.S. 43. The court also noted that "[t]his printed lease agreement was drafted and prepared by plaintiff's assignor and not one whit thereof was changed or added." 7 UCC Rep.Serv. at 1183.

In *Granite Worsted Mills, Inc. v. Aaronson Cowen, Ltd.*, 29 A.D.2d 303, 287 N.Y. S.2d 765, 5 UCC Rep.Serv. 98 (1968), the court upheld an arbitrator's finding that the following clause in a sales agreement was unconscionable:

> Buyer shall not be entitled to claim or recover consequential damages for defective goods (whether the defect be latent or otherwise), nor for manufacturing, processing or selling expenses or for the loss of contemplated use or profits; and in all events Buyer's damages shall not exceed the difference in value on date of delivery between goods specified and goods actually delivered.

287 N.Y.S.2d at 768, 5 UCC Rep.Serv. at 100. While the court agreed with defendant that "different rules of law apply to unconscionability in commercial cases as opposed to situations involving consumers," it upheld the arbitrator's factual determination since "he alone had the power to deter-

mine unconscionability." 287 N.Y.S.2d at 769, 5 UCC Rep.Serv. at 101.

■ The various factors considered by the courts in deciding questions of unconscionability have been divided by the commentators into "procedural" and "substantive" categories. *See* J. White & R. Summers, *supra*, at 118–30. Under the "procedural" rubric come those factors bearing upon what in the *Weaver* case was called the "real and voluntary meeting of the minds" of the contracting parties: age, education, intelligence, business acumen and experience, relative bargaining power, who drafted the contract, whether the terms were explained to the weaker party, whether alterations in the printed terms were possible, whether there were alternative sources of supply for the goods in question. The "substantive" heading embraces the contractual terms themselves, and requires a determination whether they are commercially reasonable. According to J. White & R. Summers, *supra*, at 128:

> Most courts take a "balancing approach" to the unconscionability question, and to tip the scales in favor of unconscionability, most courts seem to require a certain quantum of procedural plus a certain quantum of substantive unconscionability.

■ As to the substantive unconscionability of the exclusion of consequential damages, the Uniform Commercial Code expressly recognizes such terms and provides that they are not prima facie unconscionable in a commercial setting. M.C.L.A. § 440.2719(3), quoted *supra*. Such terms may under certain circumstances be commercially reasonable, and a determination of unconscionability cannot, therefore, be based on their substantive content alone.

Turning, then, to the procedural factors, the following picture emerges from the evidence in this case. Plaintiff is 39 years of age. He was born in Belle Point, Kentucky. After dropping out of school in the eighth grade, he did farm work, worked in factories, and painted signs. While he was able to testify in an understandable manner, it appears that he is practically illiterate. He stated that he cannot read, except perhaps certain items in the sports section of the newspaper. When asked by his counsel to read aloud from the retail dealer contract, he appeared able to read only isolated words.

Prior to assuming the Mobil dealership in early 1972, plaintiff had operated a Gulf service station for three years. He testified that Michael Pittiglio, a Mobil marketing representative, approached him at his Gulf station in December of 1971. After one or two additional visits, plaintiff was persuaded to leave the Gulf station and take on a Mobil dealership. Plaintiff stated that he was very busily engaged in operating his Gulf station at the time the Mobil contract was signed, that the only bargaining was over the amount of the rent, that he didn't read the contract, and that no one read or explained it to him. On both cross-examination and questioning by the court, plaintiff admitted that he had never told defendant's representatives of his inability to read, nor asked them to explain the terms of the contract.

Pittiglio was examined and stated that in performing his duties as a Mobil marketing representative, his standard procedure had been to sit down with the prospective dealer in a quiet place and go over the contract paragraph by paragraph. He had no specific recollection, however, as to whether this procedure was followed with the plaintiff. He testified that he was not authorized to vary the printed contract terms. If plaintiff had refused to sign because of a certain term, he might have tried to change plaintiff's mind by telling him it was the standard contract; if plaintiff had persisted, Pittiglio would have called in his supervisor for advice. While Pittiglio recalled instances of the alteration or deletion of some terms in the standard contract, he did not recall any occasion on which the term in question here had been deleted. (Robert Allerton, who replaced Pittiglio as Mobil's marketing representative for plaintiff's area in 1972, gave substantially identical testimony to that of Pittiglio.)

█ The court finds that plaintiff assumed the Mobil dealership without being made aware that the contract contained a clause excluding the recovery of consequential damages. The issue for decision is whether the law of Michigan permits such a clause to be enforced under such circumstances. The court holds that it does not.

Defendant correctly notes that "[t]here is no basis in any of the testimony presented to the court for a finding that any Mobil representative was guilty of unfair or oppressive conduct, fraud, overreaching, misrepresentation or sharp practices." Defendant's Supplemental Brief in Support of Motion for Partial Summary Judgment, filed May 11, 1976, at 6. It is in defendant's favor that plaintiff did not indicate his inability to read or ask that the contract be explained to him. However, before a contracting party with the immense bargaining power of the Mobil Oil Corporation may limit its liability vis-à-vis an uncounseled layman, as it seeks to do in this case, to "difference money damages," it has an affirmative duty to obtain the voluntary, knowing assent of the other party. This could easily have been done in this case by explaining to plaintiff in laymen's terms the meaning and possible consequences of the disputed clause. Such a requirement does not detract from the freedom to contract, unless that phrase denotes the freedom to impose the onerous terms of one's carefully-drawn printed document on an unsuspecting contractual partner. Rather, freedom to contract is enhanced by a requirement that both parties be aware of the burdens they are assuming. The notion of free will has little meaning as applied to one who is ignorant of the consequences of his acts.

The cases cited by defendant do not require a contrary result. In *K & C, Inc. v. Westinghouse Electric Corp.*, 437 Pa. 303, 263 A.2d 390, 7 UCC Rep.Serv. 679 (1970), the Pennsylvania Supreme Court affirmed a judgment of nonsuit in an action by a corporate drycleaning establishment against a manufacturer of drycleaning equipment for losses arising from damage to clothing of the plaintiff's customers. The sales agreement expressly excluded "consequential or special damages," and the court held that this exclusion was not unconscionable under § 2–302 of the UCC. Noting that § 2–719(3) provides for the exclusion of consequential damages, the court stated:

> Here the loss is commercial. . . . Although we need not decide whether any exclusion of consequential damages where the loss is commercial can be unconscionable . . ., it is clear that the exclusion was not unconscionable here, where the buyer was hardly the sheep keeping company with wolves that it would have us believe.

263 A.2d at 393, 7 UCC Rep.Serv. at 682. The court emphasized that the plaintiff corporation was owned by an experienced businessman and an attorney with 11 years' experience in the practice of the law. These two men had studied the transaction for some six months prior to entering into the agreement. The court stated:

> Under these circumstances, the parties by excluding consequential damages had merely decided to allocate their risks in this way.

263 A.2d at 393, 7 UCC Rep.Serv. at 683.

█ Similarly, other courts in upholding contractual limitations of liability have emphasized the legal expertise of the parties and/or their conscious awareness of the burdens assumed. *See, e. g., Cryogenic Equipment, Inc. v. Southern Nitrogen, Inc.*, 490 F.2d 696, 699 (8th Cir. 1974) ("Clearly, in view of the expertise of the negotiators of this agreement (SNI's Wynne being a highly respected and knowledgeable commercial lawyer of some 18 years' standing . . . .) and the complete absence of any evidence of a disparity of bargaining power the limitation of remedy was not unconscionable."); *Wyatt Industries, Inc. v. Publicker Industries, Inc.*, 420 F.2d 454, 457 (5th Cir. 1969) ("it certainly cannot be claimed here that Publicker entered the agreement without full knowledge and appreciation of all material facts pertaining to the condition and prior unsuccessful testing of the

vessel"); *U. S. Fibres, Inc. v. Proctor & Schwartz, Inc.,* 358 F.Supp. 449, 460 (E.D. Mich.1972) *affd.,* 509 F.2d 1043 (6th Cir. 1975) ("Both parties realized that its purpose was to allocate the risks associated with this type of transaction."); *County Asphalt, Inc. v. Lewis Welding & Engineering Corp.,* 323 F.Supp. 1300, 1309 (S.D.N.Y. 1970), *affd.,* 44 F.2d 372 (2d Cir.), *cert. denied,* 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 (1971) ("plaintiff's experience and expertise, and the parties' care in negotiating these large contracts, preclude any argument of unfair surprise.").

For these reasons, defendant's motion for partial summary judgment is denied. An appropriate order may be submitted.