Juliette M. VIGIL

v.

**SEARS NATIONAL BANK, et al.**

**No. Civ.A. 01–2690.**

United States District Court,
E.D. Louisiana.

Feb. 19, 2002.

Order and Reasons on
Reconsideration
May 10, 2002.

---

Donni Elizabeth Young, Scott Michael Galante, Ness, Motley, Loadholt, Richardson & Poole, New Orleans, LA, Dawn Adams Wheelahan, New Orleans, LA, for Juliette M. Vigil.

Christopher R. Lipsett, Daniel H. Squire, Michael D. Leffel, Wilmer, Cutler & Pickering, Washington, DC, Robert Emmett Kerrigan, Jr., Duris Lee Holmes, Deutsch, Kerrigan & Stiles, New Orleans, LA, for Sears Nat. Bank, Sears, Roebuck & Co.

## ORDER AND REASONS

BERRIGAN, Chief Judge.

This matter comes before the Court on motion to stay plaintiff's action in favor of arbitration filed by the defendants Sears National Bank ("SNB") and Sears Roebuck & Company ("Sears"). Having considered the record, the memoranda of counsel and the law, the Court has determined that the motion should be granted for the following reasons.

The plaintiff filed this class action alleging that the defendants improperly levied penalties for a late payment on her SNB charge card. According to the amended complaint, the plaintiff's claims arise under the National Bank Act, 12 U.S.C. § 85, *et seq,* the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. § 1964, and Arizona law. The defendants argue that the claims are all subject to the arbitration provision contained in the written credit card agreement.

■ The plaintiff first argues that she did not enter into a written agreement to arbitrate with either SNB or Sears, as required by the Federal Arbitration Act, 9 U.S.C. § 1, *et seq,* and Louisiana law. The defendants replied to this argument with documentation showing that in August 1999, the plaintiff signed an application which, in turn, provides "[i]f approved, you agree to the terms disclosed below which apply to your account and the terms of the Sears Card Account, or Sears Card Starter Account, Cardholder Account and Security Agreement which will be provided to you with your credit card(s)." SNB provides an affidavit to support its subsequent mailing of the card and agreement to the plaintiff at her billing address, and the later mailing of an amended agreement in March 2001. Both agreements contained arbitration provisions pertaining to "[a]ny and all claims, disputes or controversies of any nature whatsoever (whether in contract, tort, or otherwise) arising out of, relating to, or in connection with (a) this Agreement ..." and "(d) the relationships which result from this Agreement ..." including the relationship with SNB or Sears. The March 2001 arbitration provision also pertained to "(e) the establishment, operating, handling or termination of the Account." In addition, the agreements provided for their application when the card or account is used, which has been recognized as acceptance of terms under Louisiana law. See *Bank of Louisiana v. Berry,* 648 So.2d 991, 993 (La.App. 5th Cir.1994).

■ Next, the plaintiff argues that Sears is not subject to any agreement to arbitrate since the credit agreement is with SNB. The arbitration provision however specifically includes both disputes pertaining to the agreement and the relationship with SNB and Sears. Assuming that Sears was not considered a third-party beneficiary of the clause, the plaintiff's argument still fail. The Fifth Circuit recognizes that arbitration is appropriate both where the signatory plaintiff relies on the terms of a written agreement with an arbitration clause in its claim against a nonsignatory defendant, and where that

signatory plaintiff raises allegations of substantially interdependent and concerted misconduct by both the signatory and non-signatory defendants. *Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir.2000).

■ In her "sur-reply," the plaintiff argues that Louisiana law applies and that the Louisiana Consumer Credit Law, La. Rev.Stat. 9:3511, C ("LCCL"), invalidates consumer credit transactions "by which the consumer consents to the jurisdiction of another state, and (2) that fix venue." However, the choice of law provision in the agreement under examination merely provides for the interpretation of the agreement under the laws of the United States and Arizona, and that the agreement is entered into in Arizona. "In this case, however, the parties did not consent to the *jurisdiction* of another state. Jurisdiction is not an issue in this case. Instead, they specifically agreed to be bound by the *law* of another state in cases where the LCCL was inapplicable." *Whitehurst v. James Noel Flying Services*, 509 So.2d 1035, 1037 (La.App. 3d Cir.1987). For purposes of enforcing the arbitration provision to this lawsuit, the Court finds that there is nothing amiss with this choice of law provision under either federal or state law.

Accordingly,

IT IS ORDERED that the motion to stay plaintiff's action in favor of arbitration filed by the defendants Sears National Bank and Sears Roebuck & Company is GRANTED.

### ORDER AND REASONS ON RECONSIDERATION

This matter comes before the Court on plaintiff's motion for reconsideration.

Having considered the record, the memoranda of counsel and the law, the Court has determined that this matter should be stayed pending arbitration for the following reasons.

■ After the Court had previously determined that arbitration was appropriate, the plaintiff presented new arguments on motion for reconsideration. She argued for the first time that the arbitration clause is unenforceable under Arizona and Ninth Circuit law because it is a contract of adhesion "with the additional characteristics that it is beyond the reasonable expectation of the consumer" and is "procedurally and substantively unconscionable." (Rec.Doc. 23, p. 2).[1] She argues that no consumer would have reason to expect an arbitration clause and that the arbitration clause is unconscionable because it eliminates plaintiff's right to a jury trial and the right to bring a class action. (Rec.Doc. 23, p. 8). Sears argues that both federal and Arizona law mandate the enforcement of the arbitration clause.

■ The arbitration clause in the cardholder agreement provides that "[t]he arbitration section of this Agreement is made pursuant to a transaction involving interstate commerce and shall be governed by the Federal Arbitration Act, 9 U.S.C. § 1 et seq." ("FAA"). The general "Governing Law" provision reads:

> This Agreement and your Account will be governed by and interpreted in accordance with the laws of the United States and, to the extent governed by state law, the laws of the State of Arizona, regardless of where you live or where you use the Account.

The plaintiff distinguishes this issue "from whether plaintiff had even entered into an Agreement with Sears." (Rec.Doc. 30, p. 2).

---

1. In her supplemental memorandum, the plaintiff argues that under federal law, the Court looks to applicable state contract law to determine enforceability. (Rec.Doc. 30, p. 2).

Under 9 U.S.C. § 2, an arbitration clause such as the one under examination "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." This language mirrors the language of the Arizona arbitration statute underlying the plaintiff's primary support, *Broemmer v. Abortion Services of Phoenix, Ltd.*, 173 Ariz. 148, 840 P.2d 1013 (Az.1992).[2]

In *Broemmer, supra,* the Arizona Supreme Court declared patient's arbitration agreement with a physician unenforceable based on uncontradicted facts presented by the plaintiff. "It would be unreasonable to enforce such a critical term against plaintiff when it is not a negotiated term and defendant failed to explain it to her or call her attention to it" and when the "[p]laintiff was under a great deal of emotional stress, had only a high school education, and was not experienced in commercial matters, and is still not sure 'what arbitration is.'" *Id.,* 840 P.2d at 1017. The *Broemmer* court did not reach the issue of unconscionability. "Because of this holding [on reasonable expectation], it is unnecessary for us to determine whether the contract is also unconscionable." *Id.*

The plaintiff's argument presents a number of problems for the Court. First, in calling for a broad rule declaring all arbitration clauses unreasonable if they

waive the right to jury trial or proceeding as a class action, the plaintiff overlooks the specific limitations put on *Broemmer* by the court:

We also restate that we decline the invitation to write a sweeping, legislative rule concerning all agreements to arbitrate. Instead, we decide this case. In this case, the facts concerning the signing of the document have all come from the plaintiff and all are uncontradicted. Under the undisputed facts in this case, the document involved is a contract of adhesion. Our enthusiasm for arbitration in general does not permit us to ignore the realities present in this case.

The dissent is concerned that our decision today sends a "mixed message." It is, however, our intent to send a clear message. That message is: Contracts of adhesion will not be enforced unless they are conscionable and within the reasonable expectations of the parties. This is a well-established principle of contract law; today we merely apply it to the undisputed facts of the case before us.

*Id.,* 840 P.2d at 1018 (emphasis original).

Further, in finding that the arbitration clause was outside of the reasonable expectation of the plaintiff under Arizona law, the Arizona Supreme Court found that "[c]learly, the issues of knowing consent and reasonable expectations are closely re-

---

**2.** Although she does not discuss it in her supplemental memorandum, the Ninth Circuit case upon which the plaintiff relies in her first motion for reconsideration is *Circuit City Stores, Inc. v. Adams*, 279 F.3d 889 (9th Cir. 2002). That case stands for the recognized proposition that state law principles apply to the formation of contracts which likewise applies in determining the validity of an agreement to arbitrate. In that case, the Ninth Circuit found the particular arbitration clause to be "unconscionable" under California law. The Court notes that a petition for certiorari was filed in *Adams, supra,* on April 3, 2002.

In any event, the Ninth Circuit distinguished *Adams, supra,* in *Circuit City Stores, Inc. v. Ahmed,* 283 F.3d 1198 (9th Cir.2002), where the plaintiff argued that he did not "have the degree of sophistication necessary" to understand the arbitration clause, and the Ninth Circuit reaffirmed the general rule that "one who signs a contract is bound by its provisions and cannot complain of unfamiliarity with the language of the instrument." *Id.,* quoting *Madden v. Kaiser Foundation Hospitals,* 17 Cal.3d 699, 131 Cal.Rptr. 882, 552 P.2d 1178, 1185 (Ca.1976).

lated and intertwined." It also affirmed the validity of standardized agreements, the terms of which are binding on customers, but "they are not bound to unknown terms which are beyond the range of reasonable expectation." *Broemmer*, 840 P.2d at 1017, *quoting Darner Motor Sales, Inc. v. Universal Underwriters Insurance Co.*, 140 Ariz. 383, 682 P.2d 388, 396 (Az. 1984), *quoting Restatement (Second) of Contracts (Standardized Agreements)* § 211.

The *Darner* court specifically approved the enforceability of standard form contract provisions:

> The rule which we adopt today for interpretation of standardized contracts ... recognizes that most provisions of standardized agreements are not the result of negotiation; often, neither the customer nor salesperson are aware of the contract provisions. The rule ... charges the customer with knowledge that the contract being "purchased" is or contains a form applied to a vast number of transactions and includes terms which are unknown ...; it binds the customer to such terms.

*Darner*, 682 P.2d at 398–399 (emphasis added). With regard to unreasonable expectations, the court referred to terms that are "bizarre or oppressive" that "eviscerates the non-standard terms explicitly agreed to or ... that ... eliminate[ ] the dominant purpose of the transaction." *Id.*, 682 P.2d at 397. A standardized arbitration clause in a brokerage agreement was found not to be beyond the reasonable expectation of the customer in *Rocz v. Drexel Burnham Lambert Inc.*, 154 Ariz. 462, 743 P.2d 971 (Az.App.1987).

In addition, the *Broemmer* court focus on the specific medical context at hand was apparent. It repeatedly relied on a law review article by Stanley Henderson, Contractual Problems in the Enforcement of Agreements to Arbitrate Medical Malpractice, 58 Va. L.Rev. 947 (1972). In discussing "The Integrity of the Arbitration Bargaining Process—Special Problems of Standardized Contracts of Adhesion," Professor Henderson wrote:

> Unless unknown terms exceed the range or reasonable expectation, the rule is that an adherent to a standard form contract binds himself in detail by blanket assent. Nevertheless, the application of these ordinary contract principles to arbitration clauses, and particularly to medical arbitration agreements, raises some troublesome issues not found in other classes of transactions or types of contracts.

\* \* \* \* \* \*

> Given the distinctive nature of the medical services transaction, the use of a standardized form runs the risk of failing to satisfy the policy of awareness. The arbitration provision, viewed from the perspective of the patient, is indeed subsidiary to the primary exchange of medical services for an undertaking of payment. After consenting to medical procedures, the contract purchaser of medical services may fairly assume that no obligation other than that of payment are imposed. Absent some guidance by the medical entity, the patient has little reason to know anything at all about arbitration, let alone that the tendered document requires it. Nor should the medical entity ordinarily expect a patient to read or even to understand a broad arbitration clause. In these circumstances a court is faced with the question of whether the patient is nevertheless bound by the term since he knew that the writing was used to embody contract terms. In resolving the question, a consideration peculiar to all executory arbitration agreements may well be weighty heavily in the medical con-

text. Not only is the resisting party (presumably the patient) claiming lack of knowledge of the arbitration term, but he asks not to be prevented from litigating a consequential loss controversy that was also unknown and non-existent at the time of contracting. Viewed in this light, the knowledge factor is doubled in its impact.

*Id.*, 58 Va. L.Rev. at 986–987.

The Court further notes that *Broemmer* was determined before the Supreme Court pronouncements in *Allied–Bruce Terminix Companies, Inc.*, 513 U.S. 265, 115 S.Ct. 834, 130 L.Ed.2d 753 (1995). The Supreme Court found that there was nothing inherently anti-consumer about the Section 2 of the FAA: "[w]e agree that Congress, when enacting [the FAA], had the needs of consumers as well as others, in mind." *Allied–Bruce*, 513 U.S. at 280, 115 S.Ct. 834, 130 L.Ed.2d 753.

In any event, § 2 gives States a method for protecting consumers against unfair pressure to agree to a contract with an unwanted arbitration provision. States may regulate contracts, including arbitration clauses, under general contract law principles and they may invalidate an arbitration clause "upon such grounds as exist at law or in equity for the revocation of any contract." ... *What States may not do is decide that a contract is fair enough to enforce all its basic terms (price, service, credit), but not fair enough to enforce its arbitration clause.* The Act makes any such state policy unlawful, for that kind of policy would place arbitration clauses on an unequal "footing," directly contrary to the Act's language and Congress' intent.

*Allied–Bruce*, 513 U.S. at 281 (emphasis added). See also *Doctor's Associates, Inc. v. Casarotto*, 517 U.S. 681, 116 S.Ct. 1652, 134 L.Ed.2d 902 (1996) (FAA preempts state statute which conditioned enforce-ability of arbitration clause on special notice requirements). Although it did not implicate the FAA, to the extent that *Broemmer* can be argued to impose distinct requirements on written arbitration clauses not applicable to other terms of the contract, it would be preempted by the FAA here. In addition, and as supported by the defendant in its brief, such arbitration clauses in standardized form consumer contracts are routinely upheld.

In any event, and assuming that Arizona law applies, the Court finds that the arbitration clause at issue is neither outside the reasonable expectation of the plaintiff nor unconscionable. As implicitly acknowledged by both parties, such clauses were routinely included in consumer contracts prior to the relevant time here. See Anne Brafford, Arbitration Clauses in Consumer Contracts of Adhesion: *Fair Play or Trap for the Weak and Unwary?*, 21 J. Corp. L 331 (1996). Unlike the plaintiff in *Broemmer, supra*, there is no evidence to support the finding that the arbitration clause was outside this plaintiff's reasonable expectation.

 The issue of unconscionability is one of law for the court to decide. *Maxwell v. Fidelity Financial Services, Inc.*, 184 Ariz. 82, 907 P.2d 51 (Az.1995). "Procedural or process unconscionability is concerned with unfair surprise." *Southwest Pet Products, Inc. v. Koch Industries, Inc.*, 107 F.Supp.2d 1108, 1113 (D.Az.2000). Procedural unconscionability focuses on "'those factors bearing upon ... the real and voluntary meeting of the minds of the contracting party...'" *Maxwell*, 907 P.2d at 58, quoting *Johnson v. Mobil Oil Co.*, 415 F.Supp. 264, 268 (E.D.Mich.1976). It bears a strong resemblance to fraud and duress. *Id.* Substantive unconscionability "concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Id.* "Indicative of substantive unconscionability are contract

terms so one-sided as to oppress or unfairly surprise an innocent party, an overall imbalance, in the obligations and rights imposed by the bargain, and significant cost-price disparity." *Id.* "It concerns the actual terms of the contract and examines the relative fairness of the obligations assumed." *Southwest Pet Products, Inc. v. Koch Industries, Inc.,* 107 F.Supp.2d 1108, 1113 (D.Az.2000).

The Court can not find that the arbitration clause is unconscionable as claimed by the plaintiff. The Court previously found that the plaintiff was given adequate notice of the term. In addition, other courts have found that the fact that the clause implicitly waives the "right" to a jury trial or the "right" to proceed by class action does not, in itself, render the clause unconscionable. A thorough discussion of the non-unconscionability of the jury waiver in an arbitration clause is contained in *Marsh v. First USA Bank,* 103 F.Supp.2d 909 (N.D.Tex.2000). Similarly, a recent and thorough discussion of validity of the arbitration clause class action waiver can be found in *Randolph v. Green Tree Financial Corp.—Alabama,* 244 F.3d 814 (11th Cir.2001). It should be noted that the plaintiff can cite to no court decision that has found such clauses to be unconscionable for the argued reasons under Arizona or any other law.

The Court is mindful of the fact that the contract at issue here is unquestionably one of adhesion. The Court also recognizes that the arbitration clause precludes jury trial and class actions, the latter a particularly valued vehicle of litigation to vindicate consumer claims that are small on an individual basis but enormous in overall volume. While the Court is sympathetic to the plaintiff's desire to pursue her claim as a class, the Court is bound by the

strong presumption in favor of affirming arbitration clauses. See *Moses H. Cone Memorial Hospital v. Mercury Construction Co.,* 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983); *Bhatia v. Johnston,* 818 F.2d 418, 421 (5th Cir.1987), citing *Mitsubishi Motors Corp. v. Soler Chrysler–Plymouth, Inc.,* 473 U.S. 614, 105 S.Ct. 3346, 87 L.Ed.2d 444 (1986). "[W]e are well past the time when judicial suspicion of the desirability of arbitration and of the competence of arbitral tribunals inhibited the development of arbitration as an alternative means of dispute resolution." *Mitsubishi,* 473 U.S. at 626—627. The concerns of those consumers seeking to void such arbitration clauses need to be addressed to Congress.[3]

Accordingly,

IT IS ORDERED that the plaintiff's motion for reconsideration is PARTIALLY GRANTED and PARTIALLY DENIED, and the defendant's motion to stay plaintiff's action in favor of arbitration is GRANTED.

---

**3.** Such attempts have apparently been and are being made. See "To Litigate or Arbitrate? No Matter—The Credit Card Industry Is Deciding For You," *Journal of Dispute Resolution* 101, 116–118 (2001)