509 F.2d 1043
 16 UCC Rep.Serv. 1
 U.S. FIBRES, INC., a Michigan Corporation,
Plaintiff-Appellant and Cross-Appellee,
v.
PROCTOR & SCHWARTZ, INC., a Pennsylvania Corporation,
Defendant and Third-Party Plaintiff-Appellee and
Cross-Appellant,
v.
U.S. EQUIPMENT COMPANY, a Michigan Corporation Third-Party
Defendant-Appellant and Cross-Appellee.
 Nos. 73--2091 to 73--2093.
 United States Court of Appeals,
Sixth Circuit.
 Jan. 17, 1975.
 
 William H. Merrill, Detroit, Mich., Paul L. Nine, Carl J. Marlinga, Warren, Mich., for plaintiff-appellant.
 Neill T. Peters, F. R. Damm, Detroit, Mich., for defendant-appellee.
 Before CELEBREZZE and LIVELY, Circuit Judges, and O'SULLIVAN, Senior Circuit Judge.
 LIVELY, Circuit Judge.
 
 
 1
 In this diversity action the purchasers of manufacturing equipment sued the seller-manufacturer for damages. The plaintiffs sought to recover for alleged breach of express and implied warranties, fraud and negligence. In its counterclaim the defendant sought recovery on an account, which was undisputed, and damages allegedly incurred by it as the result of fraudulent misrepresentations of the plaintiffs. Following two lengthy hearings the district court entered judgment in favor of the defendant on all claims of the plaintiffs and on the stated account. The counterclaim based on fraud was dismissed. We affirm.
 
 
 2
 A complete statement of the facts and legal issues as developed in the district court is set forth in its opinions which are reported at 358 F.Supp. 449 and 358 F.Supp. 467. In dealing with the appeal we will attempt to avoid unnecessary repetition of matters covered in the reported opinions. The plaintiffs will be referred to as Fibres and the defendant as Proctor. The Uniform Commercial Code (UCC) applies to the transactions between the parties and they provided that the law of Pennsylvania governs the construction and interpretation of their written agreements. The various issues on appeal will be treated separately, though briefly, in view of the extended treatment of each by the district court.
 
 
 3
 The two contracts clearly contained an express warranty against defects in materials or workmanship. Proctor spent large sums in replacing and reworking portions of the equipment which were admittedly defective. However, Fibres maintains that other express warranties were created by detailed description of the ovens in the typewritten portion of the contracts and that these warranties could not be excluded by inconsistent disclaimer language appearing in later printed portions of the contracts. This argument overlooks the fact that both contracts, in the typewritten portions and before the description of the ovens, under the heading PERFORMANCE, provided that 'in view of the variables present effecting (sic) the capacity of the machine, no guarantee can be extended.' Immediately following this disclaimer was a statement that 'the Company's standard warranty outlined later in this contract does apply.' The printed warranty clause, identical in both contracts, was as follows:
 
 
 4
 LIABILITY CLAUSE: The Companys liability hereunder shall be subject to the following:
 
 General:
 
 5
 1. The Company warrants the machine against defects in materials or workmanship, but makes no other warranties, express or implied (except as set forth under 'Patents') unless the word 'guarantee' is used. Warranties of merchantability or of fitness for a particular purpose or arising from a course of dealing or usage of trade, are specifically excluded. The Purchaser agrees that any affirmations of fact, description of the machine or sample or model machine herein referred to, whether or not the same relate to production or capability of the machine to perform, are not the basis of this contract, unless the word 'guarantee' is used in connection therewith, in which case the same shall be express warranties.
 
 
 6
 Between the two disclaimers was the description upon which Fibres relies for its claim of express warranties. In the first contract the pertinent language was: 'This conveyor is especially designed to hold a tolerance of 1/32 across the width of the batt, based on a 30 pound per square foot compressive force.' The second contract stated that--'This conveyor is especially designed with a deflection tolerance of 1/32 across each conveyor plate. This deflection is further based on a uniformly distributed load of 30 pounds per sq. ft.' It is provided in UCC § 2--313(1)(b) that '(a)ny description of the goods which is made part of the basis of the bargain creates an express warranty that the goods shall conform to the description.' Exclusion of express warranties is permissible under § 2--316(1) of the UCC, which provides that language or conduct creating warranties and that tending to negate them 'shall be construed wherever reasonable as consistent with each other. . . .'
 
 
 7
 If the machinery involved had been tried and proven in the manufacturing process in which Fibres intended to employ it, or if it had been sold by specification alone, the description might be held to create an express warranty. S--C Industries v. American Hydroponics System, Inc., 468 F.2d 852 (5th Cir. 1972). However, the evidence fully supports the finding of the district court that the parties were attempting to put together a combination of machinery to fabricate a product by an 'unproven process.' Furthermore, the general manager of Fibres, Mr. Steuernagel, was fully aware of the 'variables' referred to in the disclaimer of guarantee of performance. The language of description referred only to the expectations of the designers and in no way guaranteed that these expectations would be met. Furthermore, there is substantial evidence that executives of Fibres who participated in the purchase of the equipment never expected it to produce finished pads having a thickness tolerance of 1/32 inch across their width. Thus, this descriptive language was not 'part of the basis of the bargain.' UCC § 2--313(1)(b). The district court correctly determined that the language which excluded an express warranty was not inconsistent with the language of description, UCC § 2--316(1), and gave it effect.
 
 
 8
 Fibres contends that it was entitled to recover under implied warranties of fitness for a particular purpose and of merchantability. An implied warranty of fitness for a particular purpose exists only '(w)here the seller at the time of contracting has reason to know any particular purpose for which the goods are required and that the buyer is relying on the seller's skill or judgment to select or furnish suitable goods . . ..' UCC § 2--315. There is abundant factual support in the record for the district court's finding that Fibres, acting through its agent Steuernagel, did not rely on Proctor's skill or judgment in selection of the equipment with which it proposed to make dry resinated pads by Steuernagel's new 'secret process.' Therefore, there could be no implied warranty of fitness.
 
 
 9
 Reliance upon the seller is not a requirement in the case of implied warranties of merchantability. If the seller is a 'merchant,' such a warranty is implied in every contract for the sale of goods '(u)nless excluded or modified.' UCC § 2--314. This warranty may be excluded only by language which mentions merchantability and is conspicuous. UCC § 2--316(2). The exclusion in this case, which was contained in the previously quoted liability clause, used the word 'merchantability.' Thus, the question is whether this disclaimer was 'conspicuous' as defined in UCC § 1--201(10):
 
 
 10
 (10) 'Conspicuous': A term or clause is conspicuous when it is so written that a reasonable person against whom it is to operate ought to have noticed it. A printed heading in capitals (as: Non-Negotiable Bill of Lading) is conspicuous. Language in the body of a form is 'conspicuous' if it is in larger or other contrasting type or color. But in a telegram any stated term is 'conspicuous.' Whether a term or clause is 'conspicuous' or not is for decision by the court.
 
 
 11
 Fibres relies principally on Boeing Airplane Co. v. O'Malley, 329 F.2d 585 (8th Cir. 1964), which applied Pennsylvania law in holding that a disclaimer 'in the same color and size of other type used for the other provisions' of a contract was not conspicuous. Id. at 593. In that case the court was dealing with a warranty of fitness for a particular purpose rather than one of merchantability. A fundamental question was the meaning of 'as is' in the dealings between the parties. In the present case the heading under which the disclaimer appeared met the requirement of § 1--201. Neither in Boeing, supra, nor in the Pennsylvania cases relied on by Fibres, is it clear that the court considered contracts in which a heading in bold-type capital letters of the same size as all other headings, appeared at the beginning of the exclusion clause. We do not read these cases as holding the Pennsylvania rule to be that there can be no disclaimer as a matter of law if type of the same color and size is used in the text even though the heading is in capital letters.
 
 
 12
 It is significant that the official UCC comments under Section 1--201(10) state--
 
 
 13
 10. 'Conspicuous.' New. This is intended to indicate some of the methods of making a term attention-calling. But the test is whether attention can reasonably be expected to be called to it.
 
 
 14
 As we have pointed out, near the beginning of each contract, in the typed portion where guarantee of performance was excluded, there was a reference to 'the Company's standard warranty outlined later in this contract.' From exhibits introduced by Proctor it is clear that the liability clauses of the contracts were scrutinized with care by Fibres. One examining these contracts was put on notice by the early disclaimer of performance that only the standard warranty of Proctor applied. The testimony of Fibres executives was that they were familiar with the contents of the printed portions of the contract. There was no surprise. Knowing that they were employing an untried combination of components, which had been successfully operated separately but not together, in an attempt to produce a familiar product by a new process, the principals of Fibres could not realistically have expected Proctor to extend the warranties which they now claim. Under the facts of this case the district court correctly held that attention could reasonably be expected to be called to the disclaimer. Conspicuousness is a question of law for the court. Adams Van Service, Inc. v. International Harvester Corp., Pa. Court of Common Pleas, Allegheny County (1973), 14 UCC Rep. Serv. 1142.
 
 
 15
 In denying Fibres' claim based on fraud the district court found that Proctor made no material misrepresentations of fact. Upon conflicting evidence the court determined that it had never been the intention or understanding of the parties that Proctor guaranteed that the equipment would produce pads of uniform thickness. Having had no experience with this particular operation, Proctor could only give an opinion as to how the equipment would perform. Furthermore, the claim of Fibres that Proctor concealed its knowledge from Fibres that the equipment would not produce pads of uniform thickness is not borne out by the record. Fibres officials Clapp and Steuernagel testified that Proctor's chief inspector told them before production began that he did not believe it was possible to maintain a tolerance of 1/32 inch across the pads with the type conveyor that was being used. When Christianson, a sales representative of Proctor, referred to this tolerance it was never with reference to the finished product. He described the success of the dryer in a different procedure and predicted similar results using Steuernagel's 'secret process.' This and other evidence relied upon by Fibres fell far short of establishing the elements necessary for proof of fraud.
 
 
 16
 All of the foregoing issues were decided by the district court on a motion for an involuntary dismissal under Rule 41(b), Fed.R.Civ.P. The court incorporated findings of fact in its opinion granting the motion, and we apply the 'clearly erroneous' standard of review prescribed by Rule 52(a). Though there was a great deal of conflict in the testimony of witnesses, the findings of the district court are supported by substantial evidence and may not be set aside by this court. Furthermore, no erroneous application of rules of law to these facts has been demonstrated by Fibres.
 
 
 17
 Following the second hearing the district court made a finding of no actionable negligence on the part of Proctor. The recitation by the court of numerous problems encountered by Fibres in attempting to produce satisfactory batting is not inconsistent with this finding as Fibres contends. At the request of Fibres these problems were treated as defects in materials or workmanship and were remedied by Proctor at its own expense. Once these extended repairs were completed the ovens operated properly until Fibres went out of business. In finding that Proctor was not negligent either in design or manufacture the District Judge made a detailed analysis of the design and manufacture of the equipment. The finding is not clearly erroneous and may not be set aside by this court.
 
 
 18
 Having found no negligence on the part of Proctor the court had to consider the issue of contributory negligence only as it related to Proctor's counterclaim. The evidence clearly supports the finding that as early as June, 1966 Fibres seriously overloaded the equipment. However, the court also found that there was no proof that either party realized at the time that overloading was occurring. It therefore held that Fibres had no duty to advise Proctor of this fact. Since Proctor's counterclaim was based on the claim that Fibres' failure to inform it of the overloading constituted fraud, no recovery was allowed. In view of these holdings it is clear that no damages were withheld from Fibres or awarded to Proctor by the district court on the basis of its findings with respect to overloading the equipment. Thus the extensive discussion in briefs of the existence and extent of overloading is immaterial in view of our conclusion that the district court's findings on the negligence claim and the counterclaim for fraud must stand.
 
 
 19
 This court's determination that the district court correctly denied any recovery by Fibres renders extended discussion of the clauses which limited damages under the contracts unnecessary. However, we note that UCC § 2--719 permits limitation or exclusion of consequential damages so long as it is not unconscionable. Unconscionability rarely exists in a commercial setting involving parties of equal bargaining power. County Asphalt, Inc. v. Lewis Welding & Engineering Corp., 323 F.Supp. 1300 (S.D.N.Y.1970), aff'd, 444 F.2d 372 (2d Cir.), cert. denied, 404 U.S. 939, 92 S.Ct. 272, 30 L.Ed.2d 252 (1971). See also Cryogenic Equipment, Inc. v. Southern Nitrogen, Inc., 490 F.2d 696 (8th Cir. 1974); K & C, Inc. v. Westinghouse Electric Corp., 437 Pa. 303, 263 A.2d 390 (1970), 7 UCC Rep.Serv. 679.
 
 
 20
 The record supports the district court's finding that '. . . there was uneven resin distribution in much of plaintiff's product.' Such uneven resin distribution explained the lack of uniform thickness in the pads, according to credited testimony. Thus, even if it were held that express and implied warranties existed with respect to the thickness tolerance of the pads or that Proctor did misrepresent the capability of the equipment to produce pads of uniform thickness, Proctor's derelictions would not have been the cause of Fibres' claimed losses. The one component of the entire production line that was clearly the responsibility of Fibres was the 'lawn fertilizer spreader' which introduced dry resin into the cotton fibres to produce dry resinated pads. As the district court noted, the dryer 'only receives what is fed into it.' If Steuernagel's method of introducing the resin in this manner failed to produce an even distribution and this failure sufficiently explains the uneven thickness of the finished pads, the deficient result cannot be charged to Proctor under any theory of law.
 
 
 21
 Separate appendices were filed by the parties to this appeal. Rule 30 of the Federal Rules of Appellate Procedure provides for a single appendix. Furthermore, the brief of appellants exceeded the length permitted by Rule 28(g), Fed.R.App.P. Failure to follow these rules results in an unwarranted burden on the court.
 
 
 22
 Affirmed on appeal and cross-appeal. Each party will bear its own costs.