Gerald **THEUERKAUF, d/b/a Lakeland Mink Ranch, Plaintiff,**

v.

**UNITED VACCINES DIVISION OF HARLAN SPRAGUE DAWLEY, INC., Defendant.**

No. 2:91–CV–275.

United States District Court, W.D. Michigan, N.D.

Jan. 13, 1993.

Joseph C. Sartorelli, Petrucelli & Petrucelli, Iron River, MI, for plaintiff.

Ronald D. Keefe, Kendricks, Bordeau, Adamini, Keefe, Smith & Girard, Marquette, MI, Deborah S. Burke, Thomas A. Withrow, Henderson, Daily, Withrow & DeVoe, Indianapolis, IN, for defendants.

## OPINION

QUIST, District Judge.

This is a diversity action between an Indiana corporation and a Michigan resident. This action arises out of plaintiff's loss of 1,970 breed stock mink after the mink were injected with BIOCOM–DP vaccine on July 2 and 3, 1990. The vaccine is intended to prevent distemper, virus enteritis, botulism, and pseudomonas pneumonia in mink. The defendant manufactures, tests, and distributes the vaccine.

Plaintiff states three claims against defendant. Count One is a negligence claim. Plaintiff claims that defendant was negligent in failing to use reasonable care to discover that the vaccine was harmful to the mink and failing to take reasonable precautions to warn the plaintiff that the vaccine was harmful. Count Two is a breach of warranty claim. Plaintiff claims that the vaccine was not reasonably fit for the general purpose for which it was sold; and therefore, defendant breached an express warranty as well as an implied warranty of fitness and merchantability. Count Three is a fraud claim. Plaintiff claims that defendant misrepresented the safety of the vaccine to the plaintiff and omitted to warn the plaintiff of the harmful effects of the vaccine. Plaintiff seeks damages for the loss of the 1,970 mink, the cost of the veterinary treatment and medication, and lost profits. In addition, Count Three seeks compensation for emotional distress and punitive damages.

Defendant filed a Motion to Dismiss Counts One and Three for failure to state a claim. Defendant states that plaintiff's complaint arises out of a commercial contract for the purchase of the vaccine and that the Economic Loss Doctrine prevents the plain-

tiff from bringing tort claims, such as Count One and Count Three, arising under a commercial contract where the plaintiff suffers only economic loss. Defendant claims it had no duty to the plaintiff outside the contract; and therefore, the plaintiff may not make tort claims against the defendant.

Plaintiff responded to the Motion to Dismiss by stating the damages he seeks are not limited to economic losses and that the damage is to property other than the product sold and not within the contemplation of the parties when they contracted. Plaintiff's response also raised the additional allegation that the defendant's representative falsely represented that the Upper Peninsula Fur Breeders Association and Dr. Boydoon trusted defendant's vaccine and purchased it for their herds. Plaintiff did not allege this in the Complaint.

## DISCUSSION

■ An action may be dismissed if the complaint fails to state a claim upon which relief can be granted. Fed.R.Civ.P. 12(b)(6). The moving party has the burden of proving that no claim exists. All factual allegations in the complaint must be presumed to be true, and reasonable inferences must be made in favor of the non-moving party. *Miree v. DeKalb County*, 433 U.S. 25, 97 S.Ct. 2490, 53 L.Ed.2d 557 (1977); 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.07[2.5] (2d ed.1991). Dismissal is proper only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957). Dismissal is also proper if the complaint fails to allege an element necessary for relief or "if an affirmative defense or other bar to relief is apparent from the face of the complaint...." 2A James W. Moore, *Moore's Federal Practice*, ¶ 12.07[2.5] (2d ed.1991).

### *The Economic Loss Doctrine*

■ The Economic Loss Doctrine "bars tort recovery and limits remedies to those available under the Uniform Commercial Code where a claim for damages arises out of the commercial sale of goods and losses in-curred are purely economic." *Neibarger v. Universal Cooperative, Inc.*, 439 Mich. 512, 515, 486 N.W.2d 612, 613 (1992). The purpose of the Uniform Commercial Code is to simplify the law governing commercial transactions and to standardize the laws governing commercial transactions in all states. The Doctrine distinguishes between cases involving the sale of goods for commercial purposes where the parties' economic expectations are protected by commercial and contract law and the sale of defective products to individual consumers who are injured in a manner which has traditionally been remedied by tort law. *Id.* at 519–23, 486 N.W.2d at 614–16.

Contract and tort law have different purposes. Contract law protects the interests for which the parties bargained or could have bargained. Tort law protects society's interest in protecting people from harm. Specifically, product liability law encourages the production of safer products. Product liability law allocates the risks of unsafe products on the manufacturer rather than the consumer. "Where *all* parties involved ... are commercial businesses, this rationale disappears." *Id.* at 526, 486 N.W.2d at 617 (quoting *Consumer Power Co. v. Mississippi Valley Structural Steel Co.*, 636 F.Supp. 1100, 1105 (E.D.Mich.1986)) (emphasis in original).

The Michigan Supreme Court cited *Miller v. United States Steel Corp.*, 902 F.2d 573 (7th Cir.1990) for a discussion of economic loss. In *Miller*, the Seventh Circuit stated that economic loss was a misnomer and should more appropriately be called commercial loss. Commercial loss is distinguished from injury to the plaintiff personally or injury to property other than the product. The Seventh Circuit noted that personal injuries and property injuries are economic losses in the sense that they can be compensated by money. The Seventh Circuit noted that contract law was better suited to deal with purely commercial loss. On the other hand, product liability law is a special branch of tort law designed to cover cases in which personal injury occurs to a consumer or bystander. *Id.* at 574.

The Michigan Supreme Court stated that the Economic Loss Doctrine may apply even

where property other than the product sold is defective. The court stated that determining when the Economic Loss Doctrine applies "requires consideration of the underlying policies of tort and contract law as well as the nature of the damages." *Neibarger*, 439 Mich. at 531, 486 N.W.2d at 620. The court noted that, in many instances, the failure of a product to work as expected will cause damage to other property and this damage is not beyond the contemplation of the parties. The court stated:

> Damage to property, where it is the result of a commercial transaction otherwise within the ambit of the UCC, should not preclude application of the economic loss doctrine where such property damage necessarily results from the delivery of a product of poor quality.

439 Mich. at 531, 486 N.W.2d at 620.

Judge Bell of this Court refused to allow tort claims of fraud, misrepresentation, and negligence in an action which was in essence a contractual dispute. *Merchants Publishing Co. v. Maruka Machinery Corp.*, 800 F.Supp. 1490 (W.D.Mich.1992). In *Merchants Publishing*, Judge Bell noted that an action in tort under Michigan law "requires a breach of duty separate and distinct from a breach of contract; that 'an action in tort will not arise for a breach of contract unless the action in tort would arise independent of the existence of the contract.'" *Id.* at 1493 (quoting *Brock v. Consolidated Biomedical Labs.*, 817 F.2d 24, 25 (6th Cir.1987)).

On the other hand, Judge McKeague of this Court found a situation in which the Economic Loss Doctrine did not apply. *Citizens Insurance Co. v. Proctor & Schwartz*, 802 F.Supp. 133 (W.D.Mich.1992). *Citizens Insurance* held that fire damage that occurred when a roaster caught fire could be remedied in tort (except for the damage to the roaster itself). *Citizens Insurance* noted the difference between "disappointment" and "disaster." Disappointment occurs when the economic loss is a "natural, foreseeable result of the product's defect...." *Id.* at 140.

In the instant case, the Economic Loss Doctrine prohibits plaintiff from maintaining his tort claims because the dispute here is in essence a contractual dispute in which the damage arose out of the commercial sale of goods. The plaintiff and defendant both operate businesses. They entered into an agreement by which plaintiff would purchase the vaccine from the defendant to use on plaintiff's breed stock mink. The mink were used by plaintiff to produce income as is illustrated in his complaint, which alleges lost profits. Moreover, plaintiff had purchased similar vaccines from other vendors. Plaintiff's status in the contractual setting with defendant was that of a businessman and not an ordinary consumer. Unfortunately, the plaintiff allegedly did not get what he bargained for, and the vaccine which plaintiff purchased was allegedly harmful to his mink resulting in the loss of the mink. This loss is an economic loss to his business and may be compensated only by traditional contract remedies.

Plaintiff's claims of negligence and fraud as found in the complaint are not tort claims which arise independent of the contract; therefore, defendant owed no duty to the plaintiff "separate and distinct" from the duty and under the contract. *Merchants Publishing Co. v. Maruka Machinery Corp.*, 800 F.Supp. 1490 (W.D.Mich.1992). Instead, the claims arise because the plaintiff contracted to purchase the vaccine and are intertwined with the product's performance. Plaintiff's negligence claim states that defendant failed to discover that the vaccine was dangerous and failed to warn the plaintiff. Similarly, plaintiff's fraud claim states that defendant misrepresented the product as safe. These claims arise only because the product did not work as it was supposed to work. To allow these tort claims would swallow the Economic Loss Doctrine because these torts could be claimed anytime that a product did not work as it was supposed to work. The result would strip the Doctrine and the Uniform Commercial Code of its purpose to simplify the laws governing commercial contracts and to lend predictability to contracting parties. This Court believes that the only remedy for claims relating to the performance of the product, such as a claim that the product did not work as it was

supposed to work, may be brought under contract law.[1]

■ The Economic Loss Doctrine applies even though the damage claimed by the plaintiff occurred to property other than the product itself. The Michigan Supreme Court dealt with this issue specifically in *Neibarger* and stated that the Doctrine applies to damage to property other than the product if the damage "necessarily results from the delivery of a product of poor quality." The harmful effect to animals injected with a vaccine is without a doubt a necessary result which would occur from the delivery of a defective vaccine. The vaccine is intended to be injected into the animals, and one of the inherent risks of the use of vaccines is that the vaccine will cause an adverse reaction resulting in harm. This link between the product and the harm caused does not require one to stretch one's imagination to reach some tangential nexus—it is the exact damage one would expect from a defective vaccine. Allocation of this damage clearly could have been negotiated by the parties. That is, the death of the mink was a "natural, foreseeable result of the product's defect." *Citizens Insurance Co. v. Proctor & Schwartz*, 802 F.Supp. 133 (W.D.Mich.1992).

The loss of the mink resulting from a vaccine is analogous to the loss of the cows resulting from the milking machine which occurred in *Neibarger*. The only difference the Court sees between the instant case and *Neibarger* is that the plaintiff in *Neibarger* seemed to have actually contemplated that some cows may be lost. No actual contemplation appears to have occurred in the instant case, yet such contemplation would have been reasonable.

■ Plaintiff cannot shield his claims from the Economic Loss Doctrine by seeking compensation for emotional distress and punitive damages. Although the Economic Loss Doctrine by definition applies only to economic loss, the Michigan Supreme Court noted that the term economic loss is a misnomer and that the term commercial loss is more appropriate. *Neibarger v. Universal Cooperative, Inc.*, 439 Mich. 512, 486 N.W.2d 612 (1992) (citing *Miller v. United States Steel Corp.*, 902 F.2d 573 (7th Cir.1990)). *Miller* held that commercial loss is actionable under commercial and contract law and other losses are actionable under product liability law. *Miller* stated that product liability law was designed to cover personal injury to a consumer or bystander. Plaintiff is a businessman and not a consumer or bystander; and therefore, plaintiff cannot claim a product liability loss. Allowing plaintiff to defeat the Economic Loss Doctrine by seeking compensation for emotional distress and punitive damages would also swallow the Doctrine. Any party to a commercial contract wishing to assert tort claims would only need to seek damages which are not traditionally economic losses.

## CONCLUSION

For the reasons stated, defendant's Motion to Dismiss Counts One and Three is **GRANTED.** A separate Order will be executed with this Opinion.

---

1. The Court would have been presented with a much more difficult question had the plaintiff claimed fraud in the inducement. This Court does not need to address whether *Neibarger* would prohibit a claim of fraud in the inducement because the question has not been presented. However, the Court is aware of a pre-*Neibarger* case decided by the Eastern District of Michigan which refused to dismiss fraudulent representations based on the Economic Loss Doctrine. *Electro–Matic Products, Inc. v. Prime Computers, Inc.*, 884 F.2d 579 (6th Cir.1989) (table opinion). This claim appears to be one of fraud in the inducement. Florida's Economic Loss Doctrine clearly does not cover fraud in the inducement. *Williams Electric Co. v. Honeywell, Inc.*, 772 F.Supp. 1225 (N.D.Fla.1991).